1  Michael C. Van, Esq.
   Nevada Bar No. 3876
2  Robert A. Ryan, Esq.
   Nevada Bar No. 12084
3  **SHUMWAY VAN & HANSEN CHTD.**
   8985 South Eastern Avenue, Suite 100
4  Las Vegas, Nevada 89123
   Telephone: (702) 478-7770
5  Facsimile:  (702) 478-7779
   Email: *michael@shumwayvan.com*
6         *rob@shumwayvan.com*
   *Proposed Counsel for Debtor*
7

8

9              **IN THE UNITED STATES BANKRUPTCY COURT**
                       **DISTRICT OF NEVADA**
10

11  In re:                              |  Bankruptcy No. 14-13698-abl
                                        |       [Chapter 11]
12  **ENCORE ACCEPTANCE I, LLC,**       |
                                        |    [Jointly Administered]
13              Debtor.                 |

14

15  In re:                              |  Bankruptcy No. 14-13699-abl
                                        |       [Chapter 11]
16  ENCORE SERVICE CORPORATION, LLC,    |
                                        |  **(This Filing Pertains to Case No.
17              Debtor.                 |       14-13698-abl)**

18  <u>**DEBTOR ENCORE ACCEPTANCE I, LLC'S DISCLOSURE STATEMENT DATED
19  SEPTEMBER 30, 2014**</u>

20

21

22

23

24

25

26

27

28

SHUMWAY VAN & HANSEN

8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

**DEBTOR'S DISCLOSURE STATEMENT DATED SEPTEMBER 30, 2014**
**TABLE OF CONTENTS**
**Encore Acceptance I, LLC – 14-13698-abl**

**ARTICLE**                                                                                    **Page**

| | | |
|---|---|---|
| | IMPORTANT INFORMATION | 1 |
| 1 | PRELIMINARY STATEMENTS | 2 |
| | 1.1 Submission of a Disclosure Statement and Plan by the Debtor | 2 |
| | 1.2 General Information Concerning the Disclosure Statement and Plan | 2 |
| | 1.3 Disclaimers | 3 |
| 2 | DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING | 4 |
| | 2.1 Time and Place of Confirmation Hearing | 4 |
| | 2.2 Deadline to Vote for and Against the Plan | 5 |
| | 2.3 Deadline for Objecting to Confirmation of the Plan | 5 |
| 3 | INTRODUCTION | 5 |
| | 3.1 Background | 5 |
| | 3.2 Membership Interests | 7 |
| | 3.3 Assets and Liabilities | 7 |
| | 3.4 Events Leading to Chapter 11 Bankruptcy | 8 |
| | 3.5 Claims Against Third Parties and Recovery of Preferential, Avoidable or Fraudulent Transfers | 8 |
| | 3.6 Significant Events During Chapter 11 Bankruptcy | 9 |
| 4 | SUMMARY OF THE PLAN | 10 |
| | 4.1 Distribution Under the Plan | 10 |
| | A. Unclassified Claims | 10 |
| | 1. Administrative Expenses | 10 |
| | a. Professional Fees | 11 |
| | b. United States Trustee | 11 |
| | c. Priority Tax Claims | 12 |
| | B. Classified Claims | 12 |
| | Class 1 - Secured Claims | 12 |
| | Class 2 – Unsecured Claims | 13 |
| | Class 3 – Equity Interest Holders | 13 |
| | 4.2 Means for Implementation and Execution of the Plan | 14 |
| | 4.3 Post-Confirmation Management | 14 |
| | 4.4 Disbursing Agent | 14 |
| | 4.5 Risks Inherent in the Plan | 14 |
| | 4.6 Tax Consequences of the Plan | 15 |
| 5 | CONFIRMATION REQUIREMENTS AND PROCEDURES | 16 |
| | 5.1 Voting, Accepting/Rejecting Plan, and Objections to Confirmation | 16 |
| | A. Allowed Claims. | 17 |
| | B. Impaired Claim or Interest | 17 |
| | C. Who May Not Vote | 18 |
| | D. Votes Necessary to Confirm the Plan | 18 |

**DEBTOR'S DISCLOSURE STATEMENT DATED SEPTEMBER 30, 2014**
**TABLE OF CONTENTS**
**Encore Acceptance I, LLC – 14-13698-abl**

<u>**ARTICLE**</u>                                                                                                            <u>**Page**</u>

|  | 5.2 | Liquidation Analysis | 19 |
|  | 5.3 | Feasibility | 21 |
| **6** | | **EFFECT OF PLAN CONFIRMATION** | 21 |
|  | 6.1 | Discharge | 21 |
|  | 6.2 | Modification of the Plan | 22 |
|  | 6.3 | Post-Confirmation Status Report | 22 |
|  | 6.4 | Final Decree | 23 |
| **7** | | **OTHER PLAN PROVISIONS** | 23 |
|  | 7.1 | Causes of Action | 23 |
|  | 7.2 | Vesting of Assets | 24 |
|  | 7.3 | Dissolution | 24 |
|  | 7.4 | Revocation of the Plan | 24 |
|  | 7.5 | Successor and Assigns | 25 |
|  | 7.6 | Reservation of Rights | 25 |
|  | 7.7 | Further Assurances | 25 |
|  | 7.8 | Severability | 25 |
|  | 7.9 | Filing of Additional Documents | 26 |
|  | | Signature Page | 26 |
|  | | Exhibit 1 – Plan of Reorganization | |
|  | | Exhibit 2 – Secured Creditors – Proposed Distribution | |
|  | | Exhibit 3 – Hypothetical Liquidation Analysis | |

Encore Acceptance I, LLC, by and through its attorneys of record, Michael C. Van, Esq. and Robert A. Ryan, Esq. of the law firm of Shumway Van & Hansen, hereby submits its Disclosure Statement Dated September 30, 2014 (the "Disclosure Statement").

## IMPORTANT

This Disclosure Statement is submitted to all creditors of Encore Acceptance I, LLC and contains information that may affect your decision to accept or reject the Plan of Reorganization (the "Plan") (submitted concurrently herewith). This Disclosure Statement is intended to provide adequate information as required by the Bankruptcy Code as it relates to the Plan. All creditors and interest holders are urged to read the Disclosure Statement and attachments with care and in its entirety.

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW, AMONG OTHER THINGS ABOUT**:

1. Who can vote or object to the Plan;

2. What the treatment of your claim is (i.e. what your claim will receive if the Plan is confirmed) and how this treatment compares to what your claim would receive in liquidation;

3. The history of the Debtor and significant events during bankruptcy;

4. What things the Court will look at to decide whether or not to confirm the Plan;

5. What is the effect if confirmed; and

6. Whether the Plan is feasible.

This Disclosure Statement will be used to solicit acceptance of the Plan, which is attached as **Exhibit 1**, upon the United States Bankruptcy Court, District of Nevada (the "Court"), approving or conditionally approving this Disclosure Statement as containing adequate information under 11 U.S.C.. § 1125(b). Conditional approval of this Disclosure

1

Statement by the Court is not an opinion ruling on the merits of the Disclosure Statement or the Plan, and does not mean the Plan has been or will be approved by the Court.

Solicitation of votes for acceptance or rejection of the Plan herein described is being sought from creditors and interest holders whose claims against, and interests in the Debtor, are impaired under the Plan.

The Court has not yet confirmed the Plan described in this Disclosure Statement. Consequently, the terms of the Plan are not yet binding on anyone. However, if the Court later confirms the Plan, then the Plan will be binding on all creditors and interest holders in this case.

## 1.    PRELIMINARY STATEMENTS.

### 1.1    Submission of a Disclosure Statement and Plan by the Debtor.

Pursuant to 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3016, the Debtor submits this Disclosure Statement and Plan.

### 1.2    General Information Concerning the Disclosure Statement and Plan.

The Debtor submits this Disclosure Statement under 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3016.

The purpose of this Disclosure Statement is to disclose information adequate to enable creditors who are entitled to vote to arrive at a reasonably informed decision in exercising their rights to vote on the Plan. A copy of the Plan is attached hereto as **Exhibit 1**. Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to them in Article I of the Plan or in the Bankruptcy Code and Bankruptcy Rules. All section references in this Disclosure Statement are to the Bankruptcy Code unless otherwise indicated.

The proposed Plan is consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide the maximum recovery to each Class of Claims considering

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

2

the assets and anticipated funds available for distribution to creditors. The Debtor believes that the Plan permits the maximum recovery for all Classes of Claimants.

This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims under the Plan. This Disclosure Statement is submitted as an aid and supplement to your review of the Plan to explain the terms of the Plan. Every effort has been made to explain fully various aspects of the Plan as they affect creditors. If any questions arise, the Debtor urges you to contact its counsel to attempt to resolve your questions. You may, of course, wish to consult with your own counsel.

**1.3    Disclaimers**.

No solicitation of votes has been or may be made except pursuant to this Disclosure Statement and 11 U.S.C. § 1125 and no person has been authorized to use any information concerning the Debtor to solicit acceptances or rejections of the Plan other than the information contained in this Disclosure Statement. Creditors should not rely on any information relating to the Debtor other than that contained in this Disclosure Statement and the exhibits attached.

The financial data relied upon in formulating the Plan is based on the Debtor's representations, statements made by representatives of the Debtor, the Proofs of Claim filed by Claimants, and publically available documents. While the information provided herein is believed reliable, the Debtor has not undertaken to verify or investigate such information, and makes no representation as to the accuracy or completeness of the information.

Except as set forth in the Disclosure Statement and the exhibits, no representation concerning the Debtor, its assets, past operations, or concerning the Plan is authorized, nor are any such representations to be relied upon in arriving at a decision with respect to the Plan. Unless another time is specified, the statements contained in this Disclosure Statement are made as of the date hereof. Neither delivery of this Disclosure Statement nor any exchange of rights made concerning the Disclosure Statement and the plan shall under any circumstances

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

imply that there has been no change in the facts set forth herein since the date of the Disclosure Statement and the materials relied upon in preparation of the Disclosure Statement were compiled.

Distribution of this Disclosure Statement should not be construed as any representation or warranty at all, either express or implied, by the Debtor, its counsel, or its professional consultants that the Plan is free from risk, that the acceptance of the Plan will result in a risk-free restructuring of the Debtor's obligations or that the obligations of the Debtor as restructured by the Plan will be fully performed in the future without risk. The approval by the Bankruptcy Court of this Disclosure Statement does not constitute an endorsement by the Bankruptcy Court of the Plan or a guarantee of the accuracy or the completeness of the information contained herein.

This Disclosure Statement and the Plan attached as **Exhibit 1** should be read in their entirety before voting on the Plan for the convenience of holders of claims, the terms of the Plan are summarized in this Disclosure Statement, but all summaries are qualified in their entirety by the Plan, which controls in case of any inconsistencies.

**2.**     **DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING**.

    **2.1**     **Time and Place of Confirmation Hearing**.

Upon the conditional approval of the Disclosure Statement, the Court will schedule and hold a hearing date to determine whether to confirm the Plan (the "Confirmation Hearing). The Confirmation Hearing will be held in Courtroom 1 of the Foley Federal Building located at 300 S. Las Vegas Boulevard, Las Vegas, Nevada 89101, on the ___ day of _____, 2014 at _____ a.m. Your will receive a separate notice of the hearing on confirmation of the Plan upon approval of this Disclosure Statement.

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

### 2.2 Deadline to Vote for and Against the Plan.

If you are entitled to vote on the Plan, it is in your best interest to timely vote on the Ballot enclosed herewith. Return the Ballot in the enclosed envelope to:

> Robert A. Ryan, Esq.
> SHUMWAY VAN & HANSEN
> 8985 South Eastern Avenue, Suite 100
> Las Vegas, Nevada 89123

Your Ballot must be received no later than _____ at 5:00 p.m. PST, or it will not be counted. A voting summary will thereafter be filed with the Court.

### 2.3 Deadline for Objecting to Confirmation of the Plan.

Objections to Confirmation of the Plan must be filed with the Court and served no later than _____ at 11:59 p.m. PST.  Any reply will be filed and served by _____.

## 3. INTRODUCTION.

### 3.1 Background.

Encore Acceptance I ("Debtor") was formed as a single purpose entity to raise money for online subprime lending.  Beginning in 2011 and into 2012, the Debtor raised money through the acquisition of loans from a variety of individuals and entities, including, without limitation, the secured creditors in this case.  The loans taken out by the Debtor were made pursuant to promissory notes, security agreements, and subscription agreements that provided principal payments plus interest payments to the secured creditors.  The money obtained from these loans was pooled by the Debtor and loaned to a company known as First American Capital Resources One, LLC ("FACR"), an entity wholly owned by the Chippewa Cree Tribe of the Rocky Boy's Reservation of Montana (the "Tribe").  The loans made to FACR by Debtor were also made pursuant to a promissory note and security agreement that secured Debtor's loan by all assets of FACR.  FACR used these loans to issue short term, high interest loans over the internet. FACR entered into a management agreement with Encore Service

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

Corporation, LLC ("ESC") in order to manage the third party service providers necessary to secure potential borrower leads, underwrite the applications, acquire credit search and identity verification, coordinate customer interaction through a call center, support all records through a web based software system, and provide the tribe with a loan decision recommendation, all of which was necessary to facilitate these short term, high interest loans, funded by the Debtor. ESC has a jointly administered Chapter 11 case (*see* Bankruptcy No. 14-13699).[1] ESC acted as the exclusive third party service providers on behalf of FACR and, in essence, managed substantially all of the Debtor's property loaned to FACR.

The business plan for the FACR online lending portfolio that had been agreed to between the Tribe and ESC required that nearly all of the initial revenue generated would be used to pay the interest on the promissory notes and start-up expenses incurred in the first year of operations. After initial challenges in raising the required capital for lending and expenses, the portfolio performed well and the Debtor was able to fulfill its obligations in making principal and interest payments to its secured creditors. However, near the end of 2012 and the beginning of 2013, the short term lending industry became more heavily scrutinized and regulated in a coordinated effort by Federal Government entities, including the Consumer Financial Protection Bureau, Federal Trade Commission, Federal Deposit Insurance Corporation, and the Department of Justice, leading to interruptions to Automated Clearing House service providers which restricted growth in the business model run by the Debtor, FACR, and ESC.

Additionally, beginning in the third quarter of 2012 and most of 2013, the Tribe began to experience internal political shifts as a result of Tribal elections that changed the leadership of the Tribal Council. This resulted in a breakdown in the relationship between the Tribe, the Debtor and ESC. These problems restricted the ability of the online lending business of FACR

---

[1] *See* Order Approving Motion for Order Directing Joint Administration of Related Cases Pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015 [ECF Docket No. 44].

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

and ESC's ability to manage that business.  FACR declined to answer emails and telephone calls to respond to urgent requests for actions to protect the lending operations and for operational decisions on recommended courses of action by ESC. FACR ceased all communications with ESC except to demand the cessation of the business without regard to the terms of the contract or taking any steps to safeguard the interests of the Debtor or its secured creditors. As a result, ESC could no longer effectively manage the loans issued by FACR to the end consumer and FACR could no longer make principal and interest payments to Debtor. Once these payments ceased, Debtor could no longer meet its obligations to its secured creditors under its loan agreements and went into default with all of its secured creditors.  In order to try and mitigate the damage and recover whatever cash it could, Debtor called its note to FACR due.   The available cash reserves of FACR were insufficient to meet its full obligations to Debtor under the FACR loans.  As a result, the Debtor had insufficient funds to meet its obligations to its secured creditors.  Thus, since early 2013 no online loans are being offered by FACR, and therefore ESC no longer has any business to manage.  As a result, Debtor has ceased receiving payments and has insufficient funds to meet all of its obligations to its creditors.  As neither Debtor nor ESC is actively doing business, Debtor has sought bankruptcy protection simply to wind down its affairs through a liquidating plan.

**3.2    Membership Interests**.

H.K. Holdings, LLC owns 100% of the membership interest in the Debtor.

**3.3    Assets and Liabilities**.

The Debtor's assets are set forth on Schedule B and Amended Schedule B.[2]  As of the Petition Date, the Debtor's assets were valued at $2,246,254.79; consisting of cash in the bank in the amount of $1,380,930.91 and an account receivable valued at $865,323.88. As of the date hereof, the value of the Debtor's assets are now $1,459,803.89. Since the Petition Date,

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

---

[2] *See* ECF Docket Nos. 1 and 35.

7

the Debtor has collected the sum of $80,000.00 towards the payment of the outstanding account receivable. Debtor does not anticipate any further payments made towards this receivable and considers it uncollectable.

The Debtor's liabilities are set forth on Schedules D and F. Pursuant to Schedule D, the Debtor's total secured debt is the sum of $1,530,822.30, and pursuant to Schedule F; the Debtor's total unsecured debt is unknown. The creditors listed on Schedule F, are all listed as contingent, disputed, and unliquidated. As of the date hereof, there were three identical proofs of claim filed by First American Capital Resources, LLC, the Tribe and Plain Green, LLC, each in the amount of $13,102,302.99. These claims are unliquidated, disputed and contingent.

### 3.4 Events Leading to Chapter 11 Bankruptcy.

In order to avoid multiple lawsuits against individual secured creditors and/or FACR, the Debtor sought protection under Chapter 11 of the Bankruptcy Code to protect and prevent the diminution in the value of the estate until it could distribute its cash assets pro rata to the secured creditors. Thus, the filing of the Chapter 11 bankruptcy case and obtaining protection under the Bankruptcy Code was a tactical business decision to avoid a depletion of the Debtor's primary cash asset prior to winding down the business.

### 3.5 Claims Against Third Parties and Recovery of Preferential, Avoidable or Fraudulent Transfers.

With the exception of attempts to collect on the outstanding account receivable listed on the Debtor's Amended Schedule B, the Debtor has not asserted any claims against third parties. The Debtor has not identified any preferential, avoidable, or fraudulent transfers to seek avoidances.

. . .

. . .

. . .

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

### 3.6 Significant Events During Chapter 11 Bankruptcy.

On May 27, 2014, the Debtor submitted its Application to Employ Shumway Van & Hansen Chtd. as Counsel for the Debtor and Debtor-in-Possession.[3] At a hearing held on July 2, 2014, the Court approved the employment of Shumway Van & Hansen and thereafter entered its Order Approving Application to Employ Shumway Van & Hansen, Chtd. as Counsel for the Debtor and Debtor-in-Possession.[4]

Also on May 27, 2014, the Debtor submitted a Motion to Designate Responsible Individual.[5] At a hearing held on July 2, 2014, the Court approved the designation of Zachary Roberts as the individual responsible for any and all duties and obligations of the Debtor-in-Possession as it relates to all matters arising in or related to this Chapter 11 bankruptcy case.

Additionally, on May 27, 2014, the Debtor submitted a Motion for Order Directing Joint Administration of Related Cases Pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015. At a hearing held on July 2, 2014, the Court ordered that the above Chapter 11 case be jointly administered with the case of *In re Encore Service Corporation, LLC*, Bankruptcy No. 14-13699-abl.[6]

On June 11, 2014, the Debtor filed a Motion to Use Cash Collateral.[7] At a hearing held on July 9, 2014, the Court approved the motion allowing the Debtor to use in cash collateral in accordance with a proposed budget.[8]

On June 17, 2014 and July 3, 2014, the Debtor, through its designated individual, appeared at the Initial Debtor Interview and § 341(a) Meeting of Creditors, both of which were

---

[3]  *See* ECF Docket No. 5.
[4]  *See* ECF Docket No. 37.
[5]  *See* ECF Docket No. 8.
[6]  *See* ECF Docket No. 44.
[7]  *See* ECF Docket No. 26.
[8]  The Order has been uploaded, but not yet entered by the Court.

9

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

conducted by the Office of the United States Trustee. Both the IDI and 341(a) Meeting were concluded on the same day they were conducted.[9]

As of the date hereof, the Debtor is current with its Monthly Operating Reports through August and has paid all quarterly fees up to date.

**4.     SUMMARY OF THE PLAN.**

The Debtor's Plan is summarized herein for the convenience of its creditors. A copy of the Plan is attached hereto and incorporated herein by this reference as **Exhibit 1**. If the Court confirms the Plan and all other conditions set forth in the Plan are satisfied, the Plan will take effect on the Effective Date which is identified in the Plan, Article I, Definitions.

**4.1     Distribution Under the Plan.**

As the Bankruptcy Code requires, the Plan placed creditors' claims into separate classes and describes the treatment of each class. The Plan also provides whether each class of claims is impaired or unimpaired.[10]   If the Plan is confirmed, each creditor and interest holder's recovery will be limited to the amount provided by the Plan.

**A.  Unclassified Claims.**

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. These claims are not considered impaired and holders of such claims are not entitled to vote on the Plan. However, a claimant may object if it believes that their treatment does not comply with the Bankruptcy Code.  As such, the Debtor did not place the following claims in any class:

**1.  Administrative Expenses.**

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed and given priority under 11 U.S.C. § 507(a).  Administrative expenses also include the value of goods and services. In addition, all fees required by 28

---

[9]   *See* ECF Docket No. 38.
[10]   *See* Plan, Article 4.

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

### a. Professional Fees.

These expenses will consist of fees for services rendered and expenses incurred by Court appointed counsel and other professional persons for the Debtor prior to the Effective Date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of this Chapter 11 case that have not yet been paid. The members of this class include: Michael C. Van, Esq. and Robert A. Ryan, Esq. of Shumway Van & Hansen, Attorneys for Debtor. All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the Effective Date or after such claims are finally allowed, whichever is later, by the Debtor to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver. The anticipated total fees to be paid in this class are approximately $50,000.00, less the pre-petition retainer paid by the Debtor in the amount of $30,000.00.

### b. United States Trustee.

These expenses consist of the post-confirmation claim of the office of the United States Trustee for its fees from the date of confirmation until the Chapter 11 file is closed by the Clerk of the Bankruptcy Court. These fees are based upon the amount of disbursements made by the Debtor and are paid on a quarterly basis. The Debtor shall timely pay all post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing the case, or enters an order either converting this case to a case under Chapter 7 or dismissal. After confirmation, the Debtor shall file with this Court and shall serve on the United States Trustee, a financial report for each quarter, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee. In the event the Debtor owes pre-confirmation fees to the United States Trustee

Shumway Van & Hansen
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

11

on the date of confirmation, the Debtor shall pay all past-due fees to the United States Trustee on or before the Effective Date of the Plan.

### c. Priority Tax Claims.

Priority tax claims include taxes described in 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires a holder of a priority tax claim to receive the present value of such claim, which may be paid in deferred cash payments. As of the Petition Date, the Debtor did not owe any tax obligations, or any other type of priority claim under 11 U.S.C. 507(a)(8).

### B. Classified Claims.

The Bar Date for filing proofs of claim will expire on October 1, 2014, ninety (90) days after the July 3, 2014, initial § 341(a) Meeting of Creditors. The following represent the classes set forth in the Plan and the proposed treatment that they will receive under the Plan.

### Class 1 – Secured Claims – Impaired.

Allowed secured claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under 11 U.S.C. § 506. The Debtor has listed on Schedule D and **Exhibit 2** attached hereto, all creditors holding secured claims which total $1,530,822.30. The claims are secured, as evidenced by a Promissory Note, Security Agreement and Subscription Agreement, by the cash identified on the Debtor's Amended Schedule B[11] which is currently being held in the Debtor-in-Possession bank account at Wells Fargo Bank, N.A. As of the date hereof, none of the creditors listed on Schedule D had filed a proof of claim in this Chapter 11 case.

Under the Plan, Class 1 creditors will be paid *pro rata* from the Debtor's cash on hand on the Effective Date after all administrative claims have been paid in full. Since the Debtor proposes only to pay creditors in Class 1 a portion of their secured claim, each of the creditor's claims is therefore impaired.

---

[11]   See ECF Docket No. 35.

SHUMWAY VAN & HANSEN

8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

**Class 2** –**Unsecured Claims - Impaired**.

As of the Petition Date, the Debtor had two (2) potential unsecured creditors.[12]  Class 2 consists of unsecured creditors who file a Proof of Claim. As of the date of the Plan, there were three (3) unsecured Proofs of Claim, filed by three (3) different creditors, which appear to be for the same obligation.  As such, the Debtor disputes any potential unsecured claims of First American Capital Resources, LLC ("First American") and Chippewa Cree Tribe of Rocky Boy's Reservation of Montana ("Chippewa Cree Tribe"), as identified on the Debtor's Schedule F as contingent, disputed, and unliquidated, and any claim of Plain Green, LLC. If it is later determined by this Court that any of the claims are valid, then First American, Chippewa Cree Tribe, and/or Plain Green, LLC will receive *pro rata* distributions if there is any cash remaining after paying administrative claimants and Class 1 creditors in full. The Debtor anticipates that no funds will remain and unsecured creditors will receive nothing.

If any other general unsecured creditor files a Proof of Claim before the October 1, 2014 Bar Date, and such claim is allowed, such creditor will receive *pro rata* distributions as described above.

General unsecured creditors who do not file a Proof of Claim before the October 1, 2014 Bar Date, will not be paid and said claims will be discharged upon confirmation of the Plan.

**Class 3** – **Equity Interest Holders.**

Equity interest holders are parties who hold an ownership interest (*i.e.* equity interest) and are classified herein as Class 3. In a limited liability company, the equity holders are members. Class 3 claims, if any, shall be paid only if funds remain after all other classes of creditors have been paid pursuant to the terms of the Plan. It is unlikely that any Equity Interest Holders will receive any funds.

---

[12]  *See* Amended Schedule F [ECF Docket No. 31].

13

**4.2      Means for Implementation and Execution of the Plan**.

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan. The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form as filed.

The Debtor has approximately $1.4 million cash on hand which is being held in an interest bearing account at Wells Fargo Bank, N.A. On or about the Effective Date of the Plan, or the allowance of certain claims, the Debtor will pay the claims of its secured creditors as identified on Schedule D and **Exhibit 2** attached hereto.  The total of administrative and secured claims is estimated to be slightly more than the total cash on hand. Therefore, the Debtor anticipates that it will have sufficient funds to substantially consummate the Plan.

**4.3      Post-Confirmation Management**.

Zachary Roberts, the appointed designated individual responsible for management of the Debtor's affairs, will continue to manage the affairs of the Debtor following confirmation of the Plan. Once the Plan has been substantially consummated, the Debtor will cease to exist and the limited liability company will be dissolved pursuant to Nevada law.

**4.4      Disbursing Agent**.

The Debtor shall act as the Disbursing Agent for making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution serviced rendered and expenses incurred pursuant to the Plan.

**4.5      Risks Inherent in the Plan**.

The confirmation of the Plan carries inherent risks based on the Debtor's ability to effectuate the terms of the Plan. As with any business venture, the Debtor's future performance is subject to economic, financial, political, catastrophic, and other conditions and contingencies beyond the Debtor's control or anticipation.

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

The causes of the Debtor's bankruptcy filing, which are described above, have been resolved through the Plan. Accordingly, the Debtor does not present any increased business risk to creditors under the Plan.

**4.6    Tax Consequences of the Plan**.

HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.

The following is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing Proofs of Claim.

The ensure compliance with the requirements imposed by the Internal Revenue Service in Circular 230, your are hereby informed that, unless expressly stated otherwise in this communication (including any attachments), any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of: i) avoiding penalties under the Internal Revenue Code; or ii) promoting, marketing, or recommending to another party any transaction or other matter addressed.

In general, the federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: a) whether its Claim constitutes a debt or security for federal income tax purposes; b) whether the claimant receives consideration in more than one (1) tax year; c) whether the claimant is a resident of the United States; d) whether all the consideration by the claimant is deemed received by that claimant as part of an integral transaction; e) whether the claimant reports income using the accrual or cash method of accounting; and f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

15

## 5.    CONFIRMATION REQUIREMENTS AND PROCEDURES.

Persons or entities concerned with confirmation of the Plan should consult with their own attorney because the law on confirming a plan of reorganization is very complex. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. There is no representation that the discussion contained below is a complete summary of the law on this topic.

To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. § 1129. These include the requirements that:

    i)      the Plan must be proposed in good faith;

    ii)     at least one impaired class of claims must accept the Plan without counting votes of insiders;

    iii)    the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

    iv)    the Plan must be feasible.

These requirements are not the only requirements listed in 11 U.S.C. § 1129, and they are not the only requirements for confirmation.

### 5.1    Voting, Accepting/Rejecting Plan, and Objection to Confirmation.

The deadline to submit a vote and the voting Ballot are discussed in Section 2 above. A creditor or interest holder has a right to vote for or against the Plan only if that creditor or interest holder has a claim or equity interest which is both: 1) allowed (or allowed for voting purposes); and 2) classified as part of an impaired class.

16

### A. Allowed Claims.

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any Proof of Claim or interest will be allowed, unless a party-in-interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

As set forth above, October 1, 2014, is the Bar Date for filing a Proof of Claim in this case. A creditor or interest holder may have an allowed claim or interest even if a Proof of Claim or interest was not timely filed. A claim is deemed allowed if: a) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated; and b) no party-in-interest has objected to the claim.

### B. Impaired Claim or Interest.

An allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. As provided in 11 U.S.C. § 1124, a class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed or it delays payments. The Debtor believes that all classes are impaired under the plan and, therefore, all are entitled to vote to accept or reject the Plan.

Creditors or parties who dispute the characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized their claim.

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject in each capacity and should cast one (1) Ballot for each claim.

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

### C. Who May Not Vote.

The following six (6) types of claims are not entitled to vote to accept or reject the Plan:

1.      Administrative Expense Claims;

2.      Claims that have been disallowed by the Court;

3.      Claims that are not allowed claims (as discussed above) and have not been deemed allowed solely for voting purposes;

4.      Claim in unimpaired classes;

5.      Claims entitled to priority pursuant to 11 U.S.C. § 507(a)(2) or (a)(8); and

6.      Claims in classes that do not receive or retain any value under the Plan.

Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(1), (a)(2), and (a)(7), are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO CONFIRMATION OF THE PLAN AND THE ADEQUACY OF THIS DISCLOSURE STATEMENT.

### D. Votes Necessary to Confirm the Plan.

If impaired classes exist, the Court cannot confirm the Plan unless: a) at least one (1) impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class; and b) all impaired classes have voted to accept the Plan, unless the Plan is

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

eligible to be confirmed by "cramdown" on non-accepting classes. These procedures are complex and you are urged to seek the advice of counsel.

A class of claims is considered to have accepted the Plan if both of the following occur: a) holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast its votes to accept the Plan; and b) the holders of at least two-third (2/3) in dollar amount of the allowed claims in the class, who vote, cast its votes in favor of accepting the Plan.

Even if one (1) or more of the impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by 11 U.S.C. § 1129. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown". The Bankruptcy Code allows the Plan to be crammed down on non-accepting classes of claims or interests if it meets all consensual confirmation requirements except the voting requirements of 11 U.S.C. § 1129(a)(8), and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. 1129(b) and applicable case law. You should consult with your own attorney regarding whether a cramdown confirmation will affect your claim, as the variations are numerous and complex.

**5.2    Liquidation Analysis**

To confirm this Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in Chapter 7 liquidation. This is known as the "Best Interest Test", which requires a liquidation analysis. The Debtor's Hypothetical Liquidation Analysis is attached hereto as **Exhibit 3.**

In Chapter 7 liquidation, the Debtor's assets are usually sold by a Chapter 7 Trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next, with unsecured creditors being paid

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

from any remaining proceeds according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any. For the Court to be able to confirm this Plan, it must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under Chapter 7 liquidation.

Although the Debtor is of the opinion that a Chapter 7 liquidation of the assets would not be in the best interest of the creditors generally, the following is likely to occur:

1. The newly appointed Chapter 7 Trustee would have be become familiar with the Debtor's operations in order to evaluate all of the Debtor's assets and liabilities;

2. In addition to the duplication of efforts that would transpire as a result of the Chapter 7 Trustee having to review documents and interview persons in order to become sufficiently acquainted with the Debtor's assets, the Chapter 7 Trustee would likely retain professionals to aid in administering the estate;

3. An additional tier of administrative expenses entitled to priority over the Debtor's secured claims identified in Class 2 above would be incurred. Such administrative expenses would include the Chapter 7 Trustee's commission and fees for the professionals likely to be retained; and

4. There would likely be no distribution at all to the creditors until the case is ready to be closed.

The Debtor will allow the creditors and parties-in-interest to draw their own conclusions with respect to the delay associated and loss of potential recovery that may be associated with Chapter 7 liquidation. It is certain that the above factors would result in an additional dilution to the projected dividend to the holders of Class 2 claims.

20

In sum, the Liquidation Analysis illustrates that all creditors and interest holders will receive at least as much under the Plan as such creditors or interest holders would receive under Chapter 7 liquidation.

**5.3     Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two (2) important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses, which are entitled to be paid on such date. As set forth above, the Debtor has sufficient cash on hand to pay all the claims and expenses which are entitled to be paid on such date. The second aspect of feasibility considers whether the Debtor will have enough cash over the life of the Plan to make the required payments.  This is a liquidation plan in that the Debtor has ceased operations and sought the protection of the Bankruptcy Court to fairly pay all secured creditors the pro rata share of their claims.  As such, there are no future payments to be made after the effective date of the plan as all payments under the Plan shall be made in immediately available cash for the Debtor and the Debtor shall dissolve shortly after the payment of these claims.

**6.     EFFECT OF PLAN CONFIRMATION.**

**6.1     Discharge**.

This Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. § 1141. Thus, upon confirmation, the Debtor and all property dealt with in the Plan shall be free and clear of all such claims and liabilities, including without

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

limitation, liens, security interests, and any and all other encumbrances. However, the discharge will not discharge any liability imposed by the Plan. Except as provided elsewhere in the Plan, confirmation re-vests all of the property of the estate in the Debtor.

**6.2    Modification of the Plan**.

The Debtor may modify the Plan at any time before confirmation. The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if: 1) the Plan has not been substantially consummated; and 2) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to: 1) increase or reduce the amount of payments under the Plan on claims of a particular class; 2) extend or reduce the time period for such payments; or 3) alter the amount of a distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan, the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order in accordance with 11 U.S.C. § 1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of general unsecured claims.

**6.3    Post-Confirmation Status Report**.

Until the entry of the Final Decree, the Debtor shall file with the Clerk of the Court, no later than twenty (20) days after the end of the calendar quarter which occurs after the

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

entry of this order, and every six (6) months thereafter, a report of the action taken by the Debtor and the progress made toward consummation of the confirmed Plan. The report shall include, at a minimum, the following information (if applicable): 1) a schedule of any personal property costing more than $5,000.00 and any real property acquired, sold or disposed of since confirmation of the Plan and the price paid for each; 2) a schedule listing each debt, the total amount required to be paid under the Plan, the amount required to be paid to date, the amount actually paid to date, and the amount unpaid; 3) a schedule of executory contracts entered into after confirmation of the Plan; 4) a statement listing each post-petition tax (*i.e.*, income, payroll, property, sales) and payee, including the amount actually paid; and 5) the progress toward completion of the confirmed Plan and a list and status of any pending adversary proceedings or motion and resolution expected; and 6) a statement regarding the status of payment of both pre-confirmation and post-confirmation United States Trustee quarterly fees.

The Debtor shall also file progress reports not later than six (6) months after the initial progress report is due and every six (6) months thereafter, until the estate if fully administered. A copy of the initial and subsequent progress reports shall be filed concurrently with the Office of the United States Trustee.

**6.4    Final Decree**.

Once the estate has been fully administered, the Debtor or such other party as the Court shall designate in the confirmation order, shall file a motion with the Court to obtain a Final Decree to close the case. Alternatively, the Court may enter such a Final Decree on its own motion.

**7.    OTHER PLAN PROVISIONS**.

**7.1    Causes of Action.**

The Debtor retains its right to any and all causes of action.

23

SHUMWAY VAN & HANSEN

8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

**7.2** **Vesting of Assets**.

The Debtor does not anticipate that any assets will remain after confirmation as this is a liquidation Plan. If there are any remaining assets after confirmation, all property of the estate shall vest in the Debtor, or any entity it may designate, free and clear of all liens, claims, charges or other encumbrances. Without limiting the foregoing, the Debtor shall pay the charges that it incurs after confirmation for professionals' fees, disbursements, expenses or related services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

**7.3** **Dissolution**.

The Debtor's Plan is a liquidating Plan; therefore, consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by Nevada law, the Debtor will be dissolved. On or as soon as reasonably practicable after consummation of the Plan, the Debtor shall file the necessary documents for dissolution with the Nevada Secretary of State.

**7.4** **Revocation of the Plan**.

The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: 1) the Plan shall be null and void in all respects; 2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases effected by the Plan and any document or agreement executed pursuant hereto, shall be deemed null and void except as may be set forth in a separate order entered by the Court; and 3) nothing contained in the Plan shall: a) constitute a waiver or release of any claims by or against, the Debtor or any other entity; b) prejudice in any manner the rights of the Debtor or any other entity; or c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

24

**7.5     Successors and Assigns**.

The rights, benefits, and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**7.6     Reservation of Rights**.

Except as expressly set forth in the Plan, the Plan shall have no force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor, or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: 1) any Debtor with respect to the holders of claims or other entity; or 2) any holder of a Claim or other entity prior to the Effective Date of the Plan.

**7.7     Further Assurances**.

The Debtor or the Reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan, and all other entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**7.8     Severability**.

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provisions to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided, however, that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor and, to the extent such alternation or

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

**7.9    Filing of Additional Documents**.

On or before the Effective Date, the Debtor may file with the Court, all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

DATED this 30th day of September, 2014.

*/s/ Robert A. Ryan*
Michael C. Van, Esq.
Nevada Bar No. 3876
Robert A. Ryan, Esq.
Nevada Bar No. 12084
**SHUMWAY VAN & HANSEN CHTD.**
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770
Facsimile:  (702) 478-7779
Email: *michael@shumwayvan.com*
        *rob@shumwayvan.com*
*Attorneys for Debtor*

# EXHIBIT 1

Michael C. Van, Esq.
Nevada Bar No. 3876
Robert A. Ryan, Esq.
Nevada Bar No. 12084
**SHUMWAY VAN & HANSEN CHTD.**
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770
Facsimile:  (702) 478-7779
Email: *michael@shumwayvan.com*
        *rob@shumwayvan.com*
*Proposed Counsel for Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**ENCORE ACCEPTANCE I, LLC,**<br><br>Debtor. | Bankruptcy No. 14-13698-abl<br>[Chapter 11]<br><br>[Jointly Administered] |
| In re:<br><br>ENCORE SERVICE CORPORATION, LLC,<br><br>Debtor. | Bankruptcy No. 14-13699-abl<br>[Chapter 11]<br><br>**(This Filing Pertains to Case No. 14-13698-abl)** |

## <u>DEBTOR'S PLAN OF REORGANIZATION</u>

*(left margin, vertical)* SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

**DEBTOR'S PLAN OF REORGANIZATION**
**TABLE OF CONTENTS**
**Encore Acceptance I, LLC – 14-13698-abl**

<u>ARTICLE</u>                                                                                                                          <u>Page</u>

| | | |
|---|---|---:|
| 1 | **DEFINITIONS AND CONSTRUCTION OF TERMS** | 1 |
| 2 | **TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS** | 7 |
| | 2.1   Non-Classification | 7 |
| | A.   Administrative Expenses | 7 |
| | i.   Professional Fees | 7 |
| | ii.   United States Trustee | 8 |
| | B.   Priority Tax Claims | 9 |
| 3 | **CLASSIFIED CLAIMS** | 9 |
| | Class 1 – Secured Claims | 10 |
| | Class 2 – Unsecured Claims | 11 |
| | Class 3 – Equity Interest Holders | 10 |
| 4 | **TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS** | 10 |
| | Class 1 – Secured Claims | 10 |
| | Class 2 – Unsecured Claims | 11 |
| | Class 3 - Equity Security Holders | 12 |
| 5 | **COMPROMISE AND SETTLEMENT** | 12 |
| 6 | **MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN** | 13 |
| | 6.1   Means for Execution of the Plan | 13 |
| | 6.2   Post-Confirmation Management | 13 |
| | 6.3   Disbursing Agent | 14 |
| | 6.4   Method of Plan Payment | 14 |
| 7 | **EFFECT OF CONFIRMATION** | 15 |
| | 7.1   Effective Date of Plan | 15 |
| | 7.2   Revesting of Property | 15 |
| | 7.3   Discharge | 15 |
| | 7.4   Modification of the Plan | 16 |
| | 7.5   Post-Confirmation Status Report | 16 |
| | 7.6   Final Decree | 17 |
| | 7.7   Causes of Action | 17 |
| | 7.8   Non-Debtor Parties | 18 |
| 8 | **GENERAL PROVISIONS** | 18 |
| | 8.1   Retention of Jurisdiction | 18 |
| | 8.2   Injunction Relating to the Plan | 19 |
| | 8.3   Default | 19 |
| | 8.4   Dissolution | 20 |
| | 8.5   Revocation of the Plan | 20 |
| | 8.6   Successors and Assigns | 20 |
| | 8.7   Reservation of Rights | 21 |
| | 8.8   Further Assurances | 21 |

**DEBTOR'S PLAN OF REORGANIZATION**
**TABLE OF CONTENTS**
**Encore Acceptance I, LLC – 14-13698-abl**

**ARTICLE**                                                                                                   **Page**

8.9   Severability.................................................................................................... 21

8.10  Filing of Additional Documents ..................................................................... 22

8.11  Exemption from Certain Transfer Taxes.......................................................... 22

Signature Page.......................................................................................................... 22

Encore Acceptance I, LLC ("Encore Acceptance") hereby proposes the following Plan of Reorganization (the "Plan") under Section 1121 of Title 11 of the United States Code. This Plan under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. proposes to pay the creditors of Encore Acceptance. This Plan contains information regarding the treatment of creditors. You should read this and the Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

## ARTICLE 1

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings set forth below. A term used but not defined here, which is also in the Bankruptcy Code, shall have the meaning ascribe to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine, and neuter, regardless of how stated. The words, "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in 11 U.S.C. § shall apply to the terms of this Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Bar Date" shall mean twenty-five (25) days after the entry of the confirmation order.

"Administrative Expense Claim" shall mean a Claim that is Allowed under 11 U.S.C. § 503 (b) and that is entitled to priority under 11 U.S.C. § 507(a)(1), including without limitation:

    (a)    fees and expense of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and

    (b)    all fees and charges assessed against the Estate pursuant to 28 USC §1930.

1

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

"Allowed" shall mean, with reference to any Claim:

(a) a claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent, or unliquidated, and (ii) is not a Claim to which a proof of claim has been filed;

(b) a Claim to which a timely proof claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part" by a Final Order;

(c) a Claim arising from the recovery of property under 11 U.S.C. §§ 550 or 553 and allowed in accordance with 11 U.S.C. § 502(b); or

(d) any claim expressly allowed under this Plan or pursuant to the Confirmation Order.

"Auction" shall mean the sale of the Debtor's asset(s) under 11 U.S.C. § 363 of the Bankruptcy Code.

"Bankruptcy Case" shall mean the Debtor's case pending in the Bankruptcy Court under Case Number 14-13698-abl.

"Bankruptcy Code" shall mean the United States Bankruptcy Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Nevada in which the Bankruptcy Case is pending and, to the extent of any reference under 28 USC § 157, the unit of such District Court specified pursuant to 28 USC § 151.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Bar Date" shall mean October 1, 2014, with respect to the last day to file a Proof of Claim against the Estate.

2

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Nevada.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified check and money orders).

"Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, avoidance actions under 11 U.S.C. §§ 544, 545, 546, 547, 548, and 549.

"Claim" shall mean a claim against a Person or its property as defined in 11 U.S.C. § 101(5), including, without limitation: i) any right to payout, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or ii) any right to an equitable remedy for breach of performance, if such breach give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean those classes designated in Article 3 of this Plan.

"Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the Clerk of Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Debtor's Plan.

3

"<u>Contingent or Unliquidated Claim</u>" shall mean any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"<u>Debtor</u>" shall mean Encore Acceptance I, LLC.

"<u>Disbursing Agent</u>" shall have the meaning ascribed to it under Section 6.3 of this Plan.

"<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"<u>Disputed Claim</u>" shall mean:

    (a)   if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

    (b)   if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

    (c)   a Claim which is a Contingent or Unliquidated Claim.

"<u>Disputed Claim Amount</u>" shall mean the amount set forth in the Proof of Claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with 11 U.S.C § 502(c).

"<u>Distribution Record Date</u>" shall mean the Confirmation Date.

"<u>Effective Date</u>" shall mean the date set forth in Section 7.1 of the Plan.

"<u>Equity Interest</u>" shall mean any member interest in the Debtor, and all options, warrants and rights, contractual or otherwise, to acquire any such member interests, as such interests exist immediately prior to the Effective Date.

4

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to 11 U.S.C. § 541.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and as to which: i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or ii) if appeal, review, reargument or certiorari has expired, and as a result of which such order shall have become final and nonappealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"Interest" shall mean the legal rate or contractual rate a creditor is entitled to recover from the Debtor for monies due and owing.

"Lien" shall have the meaning set for in 11 U.S.C. § 101(37); except that a Lien that has been avoided in accordance with 11 U.S.C. §§ 544, 545, 546, 547, 548, 549 or 553 shall not constitute a Lien.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

"Plan" shall mean this Plan of Reorganization, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered or modified from time to time.

"Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under 11 U.S.C. § 507(a) other than Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under 11 U.S.C. § 507(a)(8).

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

"<u>Proof of Claim</u>" shall mean Official Form B10.

"<u>Property</u>" shall mean any singular real property identified in its Assessor's Parcel Number ("APN") owned or purportedly owned by the Debtor.

"<u>Professionals</u>" shall mean: i) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with 11 U.S.C. §§ 327 or 1103 and to be compensated for services pursuant to 11 U.S.C. §§ 327, 328, 329, 330 and 331; or ii) those Persons for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 503(b)(4).

"<u>Reorganized Debtor</u>" shall mean the Debtor, as reorganized after the Effective Date pursuant to the terms of this Plan.

"<u>Schedules</u>" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under 11 U.S.C. § 521 and Bankruptcy Rule 1007, as such schedules, lists, and statements have been or may be supplemental or amended from time to time.

"<u>Secured Claim</u>" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with 11 U.S.C. § 506(a), or, in the event that such Claim is a claim of setoff under 11 U.S.C. § 553, to the extent of such setoff.

"<u>Unsecured Claim</u>" shall mean a general unsecured Claim that is not a Secured Claim or that is not entitled to priority of payment under 11 U.S.C. § 507.

. . .

. . .

. . .

. . .

. . .

# ARTICLE 2

## TREATMENT OF ALLOWED ADMINISTRATIVE
## EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS.

**2.1    Non- Classification**.

As provided in 11 U.S.C. § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms of this Article 2.

### A.  Administrative Expenses.

Administrative expenses are costs or expenses of administering Debtor's Chapter 11 case, which are allowed under 11 U.S.C. § 507(a). Administrative expenses also include the value of goods and services.  On the Effective Date of the Plan, the Debtor shall hold in reserve the amount of $50,000.00 to pay Administrative Expense Claims. The Administrative Bar Date is before the Effective Date of the Plan. If Administrative Expense Claims are filed, which have an aggregate amount in excess of $50,000.00, the reserve shall be increased to the aggregate amount. From this reserve, the following Administrative Expenses shall be paid:

### i.  Professional Fees.

These expenses will consist of fees for services rendered and expenses incurred by Court appointed counsel and other professional persons for the Debtor prior to the Effective Date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of this Chapter 11 case that have not yet been paid. The members of this class include: Michael C. Van, Esq. and Robert A. Ryan, Esq. of Shumway Van & Hansen, Attorneys for Debtor. All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the Effective Date or after such claims are finally allowed, whichever is later, by the Debtor to the extent of

available funds, or such claims may be paid in accordance with any agreement or waiver. The anticipated total fees to be paid in this class are approximately $60,000.00 to $80,000.00, less the retainer of $30,000.00 previously paid.

## ii.    United States Trustee.

These expenses consist of the post-confirmation claim of the office of the United States Trustee for its fees from the date of confirmation until the Chapter 11 file is closed by the Clerk of the Bankruptcy Court. These fees are based upon the amount of disbursements made by the Debtor and are paid on a quarterly basis. The Debtor shall timely pay all post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing the case, or enters an order either converting this case to a case under Chapter 7 or dismissal. After confirmation, the Debtor shall file with this Court and shall serve on the United States Trustee, a financial report for each quarter, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee. In the event the Debtor owes pre-confirmation fees to the United States Trustee on the date of confirmation, the Debtor shall pay all past-due fees to the United States Trustee on or before the Effective Date of the Plan.

Otherwise, Administrative expenses will be paid in full in cash of the later of: i) the date such Allowed Administrative Expense Claim becomes allowed and due in accordance with its terms, including by Order of the Court; or ii) the Effective Date.

Holders of Administrative expense claims may agree to a different treatment under the Plan. Each Professional shall file a final application for allowance of compensation for services rendered or reimbursement of expenses incurred through the Administrative Bar Date.  Any award granted by the Bankruptcy Court shall be immediately paid.

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

8

After payment of said Administrative Expenses, in the event the reserve is not expended, the Debtor shall use said money to pay other claims, either classified or non-classified, such that the remainder in the Debtor's operating fund thereafter is $0.00.

All fees and expenses of Professionals for services rendered after the Administrative Bar Date in connection with the Bankruptcy Case and the Plan shall be paid by the Debtor upon receipt of reasonably detailed invoices therefore in such amounts and on such terms as such Professional and the Debtor may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**B.  Priority Tax Claims**.

Priority tax claims include taxes described in 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires a holder of a priority tax claim to receive the present value of such claim, which may be paid in deferred cash payments.  As of the Petition Date, the Debtor did not owe any tax obligations, or any other type of priority claim under 11 U.S.C.  507(a)(8).

**ARTICLE 3**

**CLASSIFIED CLAIMS**

The categories of Claims listed below classify claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to 11 U.S.C. §§ 122 and 1123(a)(1). The Plan deems a claim to be classified in a particular Class only to the extent that the claim qualifies within the description of that Class and the claim shall be deemed classified in a different Class to the extent that any remainder of such claim qualifies within the description of such different Class. A claim is in a particular Class only to the extent that any such claim is allowed in that Class and has not been paid or otherwise settled prior to the Effective Date of the Plan as set forth herein.

Claims, other than Administrative Expense Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan as follows:

**Class 1**: Secured Claims (as identified on Schedule D), secured by cash which is currently on deposit with Wells Fargo Bank, N.A.

**Class 2**:   Unsecured Claims (as identified on Schedule F) and any other general unsecured creditor who has filed a Proof of Claim.

**Class 3**:  Equity Interest Holders.

## ARTICLE 4

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

The Bar Date for filing proofs of claim will expire on October 1, 2014, ninety (90) days after the July 3, 2014, initial § 341(a) Meeting of Creditors. The following represent the classes set forth in the Plan and the proposed treatment that they will receive under the Plan.

**Class 1 – Secured Claims.**

Description: The Debtor has listed on Schedule D and Exhibit 2, attached to the Disclosure Statement, all creditors holding secured claims which total $1,530,822.30. The claims are secured, as evidenced by a Promissory Note and Subscription Agreement, by the cash identified on the Debtor's Amended Schedule B[1] which is currently being held in the Debtor-in-Possession bank account at Wells Fargo Bank, N.A. As of the date hereof, none of the creditors listed on Schedule D had filed a proof of claim in this Chapter 11 case.

Insider: The creditors listed on Schedule D and Exhibit 2 attached to the Disclosure Statement are not insiders of the Debtor.

Treatment: Class 1 creditors will be paid *pro rata* from the Debtor's cash on hand on the Effective Date after all administrative claims have been paid in full.

---

[1]    See ECF Docket No. 35.

Shumway Van & Hansen

8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

Projected Recovery: 92.10%

Status: Impaired.

Voting: Entitled to Vote.

**Class 2 –Unsecured Claims.**

Description: As of the Petition Date, the Debtor had two (2) potential unsecured creditors.[2] Class 2 consists of unsecured creditors who file a Proof of Claim. As of the date of the Plan, there were three (3) unsecured Proofs of Claim, filed by three (3) different creditors, which appear to be for the same obligation.  As such, the Debtor disputes any potential unsecured claims of First American Capital Resources, LLC ("First American") and Chippewa Cree Tribe of Rocky Boy's Reservation of Montana ("Chippewa Cree Tribe"), as identified on the Debtor's Schedule F as contingent, disputed, and unliquidated, and any claim of Plain Green, LLC.

Treatment: If it is later determined by this Court that any of the claims are valid, then First American, Chippewa Cree Tribe, and/or Plain Green, LLC will receive *pro rata* distributions if there is any cash remaining after paying administrative claimants and Class 1 creditors in full. The Debtor anticipates that no funds will remain and unsecured creditors will receive nothing.

Likewise, if any other general unsecured creditor files a Proof of Claim before the October 1, 2014 Bar Date, and such claim is allowed, such creditor will receive *pro rata* distributions as described above.

General unsecured creditors who do not file a Proof of Claim before the October 1, 2014 Bar Date, will not be paid and said claims will be discharged upon confirmation of the Plan.

. . .

---

[2]   *See* Amended Schedule F [ECF Docket No. 31].

11

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

Projected Recovery: 0%.

Status: Impaired.

Voting: Entitled to Vote.

**Class 3 – Equity Interest Holders**.

Description: Equity interest holders are parties who hold an ownership interest (*i.e.* equity interest) and are classified herein as Class 3. In a limited liability company, the equity holders are members. The only Equity Interest Holder is H.K. Holdings, LLC. H.K. Holdings, LLC owns 100% of the membership interest in the Debtor.

Treatment: Class 3 claims, if any, shall be paid only if funds remain after all other classes of creditors have been paid pursuant to the terms of the Plan. Debtor does not anticipate any funds will be available to pay Class 3 Claimants. Once the plan has been fully administered, the Debtor shall be dissolved and no Class 3 Claimants will retain an interest in the Debtor or any successor companies. The Debtor shall not make any distributions to the holders of Equity Interests. In consideration of the treatment provided in this Plan, holders of Equity Interests in the Debtor shall be required to provide services necessary to oversee the management of the Debtor and implement the Plan, including fully cooperating with any reporting requirements, closure of this Bankruptcy Case, and dissolution of the Debtor entity.

Projected Recovery: 0%.

Status: Unimpaired.

Voting: Not Entitled to Vote.

**ARTICLE 5**

**COMPROMISE AND SETTLEMENT**

Notwithstanding anything contained herein to the contrary, the allowance, classification, and treatment of all claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the claims and equity interests

12

in each Class in connection with any contractual, legal, and equitable subordination rights thereto whether arising under general principles of equitable subordination, 11 U.S.C. § 510(b) an (c) or otherwise. Pursuant to either, the Debtor's payment in full of claims or the surrendering of the collateral related thereto, as of the Effective Date of the Plan, any and all contractual, legal, and equitable subordination rights, whether arising under general principles of equitable subordination, 11 U.S.C. § 510(b) and (c) or otherwise, relating to the allowing, classification, and treatment of all allowed claims and their respective distributions and treatments hereunder are settled, compromised, terminated, and released pursuant hereto.

## ARTICLE 6

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1     Means for Execution of the Plan**.

The Debtor has $1,459,803.89 cash on hand which is being held in an interest bearing account at Wells Fargo Bank, N.A. On or about the Effective Date of the Plan, or the allowance of certain claims, the Debtor will pay the claims of its secured creditors as identified on Schedule D and Exhibit 2 attached to the Disclosure Statement. The total of administrative and secured claims is estimated to be equal to or slightly more than the total cash on hand. Therefore, the Debtor anticipates that it will have sufficient funds to substantially consummate the Plan.

**6.2     Post-Confirmation Management**.

Zachary Roberts, the appointed designated individual responsible for management of the Debtor's affairs, will continue to manage the affairs of the Debtor following confirmation of the Plan. Once the Plan has been substantially consummated, the Debtor will cease to exist and the limited liability company will be dissolved pursuant to Nevada law.

13

**6.3     Disbursing Agent**.

The Debtor shall act as the Disbursing Agent for making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution serviced rendered and expenses incurred pursuant to the Plan.

**6.4     Method of Plan Payment**.

On or about the Effective Date of the Plan, the Debtor, as Disbursing Agent shall pay the claims of its creditors in the ordinary course. Additionally, on the Effective Date, the Disbursing Agent shall begin making distributions in accordance with the Plan. Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the Effective Date of the Plan shall be paid by the Disbursing Agent, but no less than seven (7) days after such claim becomes an allowed claim.

Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Disbursing Agent, as applicable, shall establish appropriate reserves for potential payment of such claims. Notwithstanding anything herein to the contrary, the Distribution Agent shall not be required to make distributions or payments of less than Ten Dollars ($10.00) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

14

In no event, however, shall the Disbursing Agent be held liable for any failures of the Debtor to make any of its payments required under the Plan. If any holders of allowed claims against the Debtor's estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder. The Disbursing Agent shall be authorized to retain, and the Debtor shall pay for, attorneys, if necessary, to object to Proofs of Claim, pay administrative expenses and collect a reasonable fee for administering the Debtor's post-confirmation estate from the Debtor's Plan payments.

## ARTICLE 7

## EFFECT OF CONFIRMATION

**7.1    Effective Date of Plan**.

The Effective Date of the Plan is the thirty-fifth (35th) day following the date of the entry of the Confirmation Order. But if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first (1st) day after that day on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

**7.2    Revesting of Property**.

The Debtor does not anticipate that any assets will remain after confirmation as this is a liquidation Plan.  Except as otherwise provided in this Plan, the Reorganized Debtor, as of the Effective Date, shall be vested with all of the assets of the Estate, if any, for purposes of carrying out the Plan.  Following substantial consummation of the Plan, the Reorganized Debtor shall be dissolved pursuant to Nevada law.

**7.3    Discharge**.

This Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of liability for any and all debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. § 541. Thus, upon confirmation, the Debtor and all property dealt with in the Plan

15

shall be free and clear of all such claims and liabilities, including without limitation, liens, security interests, and any and all other encumbrances. However, the discharge will not discharge any liability imposed by the Plan.

**7.4     Modification of the Plan**.

The Debtor may modify the Plan at any time before confirmation. The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if: 1) the Plan has not been substantially consummated; and 2) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to: 1) increase or reduce the amount of payments under the Plan on claims of a particular class; 2) extend or reduce the time period for such payments; or 3) alter the amount of a distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan, the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order in accordance with 11 U.S.C. § 1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of general unsecured claims.

**7.5     Post-Confirmation Status Report**.

Until the entry of the Final Decree, the Disbursing Agent shall file with the Clerk of the Court, no later than twenty (20) days after the end of the calendar quarter which occurs

16

after the entry of this order, and every six (6) months thereafter, a report of the action taken by the Debtor and the progress made toward consummation of the confirmed Plan. The report shall include, at a minimum, the following information (if applicable): 1) a schedule of any personal property costing more than $5,000.00 and any real property acquired, sold or disposed of since confirmation of the Plan and the price paid for each; 2) a schedule listing each debt, the total amount required to be paid under the Plan, the amount required to be paid to date, the amount actually paid to date, and the amount unpaid; 3) a schedule of executory contracts entered into after confirmation of the Plan; 4) a statement listing each post-petition tax (*i.e.*, income, payroll, property, sales) and payee, including the amount actually paid; and 5) the progress toward completion of the confirmed Plan and a list and status of any pending adversary proceedings or motion and resolution expected; and 6) a statement regarding the status of payment of both pre-confirmation and post-confirmation United States Trustee quarterly fees.

The Disbursing Agent shall also file progress reports not later than six (6) months after the initial progress report is due and every six (6) months thereafter, until the estate if fully administered. A copy of the initial and subsequent progress reports shall be filed concurrently with the Office of the United States Trustee.

**7.6    Final Decree**.

Once the estate has been fully administered, the Debtor or such other party as the Court shall designate in the confirmation order, shall file a motion with the Court to obtain a Final Decree to close the case. Alternatively, the Court may enter such a Final Decree on its own motion.

**7.7    Causes of Action.**

The Debtor retains its right to any and all causes of action.

SHUMWAY VAN & HANSEN

8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

17

**7.8     Non-Debtor Parties**.

Confirmation of this Plan in no way modifies the obligations of non-Debtor parties unless specifically stated in the Plan.

## ARTICLE 8

## GENERAL PROVISIONS

**8.1     Retention of Jurisdiction**.

After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, 11 U.S.C. §§ 105(a) and 1142:

A.     To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

B.     To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses as well as disputes regarding compensation to and disbursements made by the Disbursing Agent;

C.     To hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

D.     To enforce the provisions of the Plan subject to the terms hereof;

E.     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan.

F.     To determine any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein;

18

G.    To hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146; and

H.    To determine such other matters as may be provided for in the Confirmation Order.

**8.2    Injunction Relating to the Plan.**

As of the Effective Date, all persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan. Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation of the Plan.

**8.3    Default.**

In the event of any default of the provisions of this Plan, a creditor or party-in-interest aggrieved by such default may provide written notice to the Debtor. The notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default. The Debtor shall fourteen (14) days after receipt of the notice of default to cure such default. If the Debtor does not cure such default within fourteen (14) days after receipt of a notice of default, then a creditor or party-in-interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provision of the Plan. The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured. Upon finding a material default,

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

19

the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan.

**8.4     Dissolution**.

The Debtor's Plan is a liquidating Plan; therefore, consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by Nevada law, the Debtor will be dissolved. On or as soon as reasonably practicable after consummation of the Plan, the Debtor shall file the necessary documents for dissolution with the Nevada Secretary of State as required by 11 U.S.C. § 1123(a)(6).

**8.5     Revocation of the Plan**.

The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: 1) the Plan shall be null and void in all respects; 2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases effected by the Plan and any document or agreement executed pursuant hereto, shall be deemed null and void except as may be set forth in a separate order entered by the Court; and 3) nothing contained in the Plan shall: a) constitute a waiver or release of any claims by or against, the Debtor or any other entity; b) prejudice in any manner the rights of the Debtor or any other entity; or c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

**8.6     Successors and Assigns**.

The rights, benefits, and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHUMWAY VAN & HANSEN**
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

**8.7** **Reservation of Rights**.

Except as expressly set forth in the Plan, the Plan shall have no force or effect until the Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor, or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: 1) any Debtor with respect to the holders of claims or other entity; or 2) any holder of a Claim or other entity prior to the Effective Date of the Plan.

**8.8** **Further Assurances**.

The Debtor or the Reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan, and all other entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**8.9** **Severability**.

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provisions to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided, however, that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor and, to the extent such alternation or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

. . .

. . .

. . .

21

**8.10    Filing of Additional Documents**.

On or before the Effective Date, the Debtor may file with the Court, all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**8.11    Exemption from Certain Transfer Taxes**.

Pursuant to 11 U.S.C. § 1146(a), any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

DATED this 29th day of September, 2014.

**ENCORE ACCEPTANCE I, LLC.**


*/s/ Zachary Roberts*
HK Holdings, LLC
By:    Zachary Roberts
Its:    Managing Member

SUBMITTED this 30th day of September, 2014.

**SHUMWAY VAN & HANSEN CHTD.**


*/s/ Robert A. Ryan*
Michael C. Van, Esq. #3876
Robert A. Ryan, Esq. #12084
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770
Facsimile:  (702) 478-7779
Email: *michael@shumwayvan.com*
        *rob@shumwayvan.com*
*Attorneys for Debtor*

22

SHUMWAY VAN & HANSEN
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
Telephone: (702) 478-7770 Facsimile: (702) 478-7779

# EXHIBIT 2

## Exhibit 2
### ENCORE ACCEPTANCE I, LLC
Chapter 11 - Bankruptcy No. 14-13698-abl
Class 1 - Secured Creditors - Proposed Distribution

| SECURED CREDITOR | CLAIM AMOUNT (Principal) | RATE @ 24% | INTEREST EARNED[1] | ALLOWED CLAIM AMOUNT | PROPOSED AMOUNT TO BE DISBURSED 92.10%[2] |
|---|---|---|---|---|---|
| Albert Muse | $57,917.79 | 24% | $8,302.08 | $66,219.87 | $60,984.89 |
| American Estate & Trust FBO Sharon B. Madsen IRA | $22,365.48 | 24% | $3,205.92 | $25,571.40 | $23,549.87 |
| American Estate & Trust LC FBO Kay Kurtz IRA | $28,537.74 | 24% | $4,090.67 | $32,628.41 | $30,048.99 |
| American Estate & Trust LC FBO Darin Miller's IRA | $73,903.57 | 24% | $10,593.52 | $84,497.09 | $77,817.21 |
| American Estate & Trust LC FBO Todd Florentino IRA | $86,170.96 | 24% | $12,351.96 | $98,522.92 | $90,734.24 |
| American Estate & Trust, LC FBO Kirstin Florentino Roth IRA | $11,583.58 | 24% | $1,660.42 | $13,244.00 | $12,197.00 |
| American Estate & Trust, LC FBO James Eastlick's IRA | $102,643.84 | 24% | $14,713.22 | $117,357.06 | $108,079.46 |
| American Estate & Trust, LC FBO Darin Miller's IRA | $28,740.27 | 24% | $4,119.70 | $32,859.97 | $30,262.24 |
| Christopher Rodenfels | $63,901.35 | 24% | $9,159.78 | $73,061.13 | $67,285.32 |
| Ellen Schwab | $159,753.42 | 24% | $22,899.45 | $182,652.87 | $168,213.34 |
| Judith A. Stewart Trust | $14,479.45 | 24% | $2,075.52 | $16,554.97 | $15,246.22 |
| Kevin J. Keighron | $37,073.85 | 24% | $5,314.26 | $42,388.11 | $39,037.14 |
| Kyle Walker | $34,975.34 | 24% | $5,013.45 | $39,988.79 | $36,827.50 |
| Linda Gordon & Leonard Gordon | $12,819.74 | 24% | $1,837.61 | $14,657.35 | $13,498.62 |
| Merrill Family Trust | $30,454.79 | 24% | $4,365.46 | $34,820.25 | $32,067.56 |
| Nancy Shore | $28,958.90 | 24% | $4,151.04 | $33,109.94 | $30,492.45 |
| Nicholas Sullo | $31,950.68 | 24% | $4,579.89 | $36,530.57 | $33,642.66 |
| Pollycomp Trust Company Custodian FBO Stephen Shore IRA | $28,958.90 | 24% | $4,151.04 | $33,109.94 | $30,492.45 |
| Robert Johnson | $159,950.69 | 24% | $22,927.73 | $182,878.42 | $168,421.05 |
| Shel Glina | $164,007.18 | 24% | $23,509.19 | $187,516.37 | $172,692.36 |
| Walter Schwab | $159,753.42 | 24% | $22,899.45 | $182,652.87 | $168,213.34 |
| TOTALS: | $1,338,900.94 | | $191,921.36 | $1,530,822.30 | $1,409,803.89 |
| Funds on hand as of 8/31/14: | $1,459,803.89 | | | | |
| Less funds held for administrative claims. | $50,000.00 | | | | |
| Funds to be disbursed: | **$1,409,803.89** | | | | |

[1] From 5/28/14 - 12/31/14

[2] Rounded from 92.10273%

# EXHIBIT 3

**EXHIBIT 3**

**Hypothetical Liquidation Analysis**
Encore Acceptance I, LLC
Chapter 11 Bankruptcy No. 14-13898-abl

## Assets:

| Description | Scheduled Value | Appraised Value or Actual Value | Less Liens or Exemption | Liquidation Value |
|---|---|---|---|---|
| Cash on hand | $1,380,930.91 | $1,459,803.89 | ($1,530,822.30) | $0.00 |
| Accounts Receivable | $865,323.88 | $0.00 | $0.00 | $0.00 |
| **TOTALS:** | **$2,246,254.79** | **$1,459,803.89** | **($1,530,822.30)** | **$0.00** |

## Liabilities:

| Creditor | Priority | Amount |
|---|---|---|
| Administrative Expenses | Administrative | $65,000.00[1] |
| General Unsecured | Non-priority | Unknown |
| **TOTAL LIABILITIES:** | | $65,000.00 |
| **Liquidation Value:** | | **$0.00** |
| **Less Administrative Expenses:** | | **($65,000.00)** |
| **Less Unsecured Claims:** | | **Unknown** |
| **Recovery to Creditors** | | **$0.00** |

---

[1]   Includes estimated Chapter 11 and Chapter 7 administrative fees and expenses.